UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

**AMBER REID**                                                                 **PLAINTIFF**

**vs.**                                                 **CIVIL ACTION NO.  3:23-CV-163-CRS**

**TENANT TRACKER, INC., et al.**                                       **DEFENDANTS**

<u>**MEMORANDUM OPINION**</u>

This matter is before the Court on the motion of the defendants, Tenant Tracker, Inc. ("Tenant Tracker") and TT Marketing, Inc. ("TT Marketing") (collectively, "Defendants") to dismiss the complaint for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2).  DN 4.  Plaintiff Amber Reid filed a response (DN 9) and Defendants replied.  DN 10. The matter is now ripe for adjudication. For the reasons that follow, the Court will grant the motion.

**I.      BACKGROUND**

Plaintiff Amber Reid filed this action against Defendants and a third entity, Transworld Systems, Inc., for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*  DN 1, at PageID # 1.  The following facts are taken from the complaint, briefs, and declarations.

Reid is a Kentucky resident, and Tenant Tracker and TT Marketing are Texas corporations not registered to do business in Kentucky.  *Id.* at 1–3.  Reid alleges that "all or most of the relevant events . . . occurred in Hardin County, Kentucky."  *Id.* at 2.

Reid rented an apartment from Lake Crest Apartments in Elizabethtown, Kentucky.  *Id.* at 3.  Reid moved out of the apartment at the termination of her lease.  *Id.*  Lake Crest Apartments

Case 3:23-cv-00163-CRS   Document 11   Filed 08/03/23   Page 2 of 14 PageID #: 149

retained Reid's security deposit and claimed Reid owed an additional fee of $330 for cleaning costs. *Id.*

When Reid later reviewed a Trans Union, LLC ("Trans Union") credit report dated July 6, 2022, she "discovered a collection tradeline furnished by [Tenant Tracker] in connection with the alleged Lakecrest debt." *Id.* at 3–4. Southwind Management, Inc. ("Southwind") was listed as the original creditor and the balance on the account was listed at $495 on the tradeline. *Id.* at 4. Reid alleges this collection tradeline is false and inaccurate, because the amount "is false, inaccurate, and overstated" and "Southwind is not the original creditor." *Id.* at 5.

On July 14, 2022, Reid sent a dispute letter to Tenant Tracker. *Id.* at 4. On July 20, 2022, TT Marketing responded with a letter which stated: "this account has been validated by the property and referred to another collection agency." *Id.* at 4–5.

Defendants Tenant Tracker and TT Marketing now move to dismiss the complaint for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). In support of the motion Defendants have filed a signed declaration of Keith A. Clifton,[1] President of both Tenant Tracker and TT Marketing. DN 4-1, at PageID # 40.

Clifton states that both Tenant Tracker and TT Marketing: (1) have never leased or owned property in Kentucky, (2) have no employees in Kentucky; (3) do not maintain company files in Kentucky; (4) have not conducted company meetings in Kentucky; (5) are not registered or licensed to do business in Kentucky; (6) do not have agents for service of process in Kentucky; (7) do not pay taxes or maintain bank accounts in Kentucky; (8) do not engage in advertising in Kentucky or other marketing activities in Kentucky targeting Kentucky consumers; (9) maintain

---

[1] Under 28 U.S.C. § 1746, an unsworn declaration has the same effect as a sworn declaration if it is dated and signed by the declarant as true under penalty of perjury. The Clifton declarations (DNs 4-1, 10-1) appear to satisfy these requirements.

no internet presence which solicits business from Kentucky consumers or engages in internet based commerce in Kentucky. *Id.* at 41. Clifton states that "[a]ny business which either [TT Marketing] or [Tenant Tracker] may have conducted in Kentucky is significantly limited and highly irregular and not related in any way to Plaintiff's claims." *Id.* Clifton states that Defendants' "only contacts with the Plaintiff in Kentucky were in response to written inquiries initiated by the Plaintiff and the responses were informational only." *Id.* at 42. Clifton states that Southwind acted as the manager of Lake Crest Apartments. *Id.* at 41. He states that TT Marketing was engaged by Southwind to collect the balance due for the apartment damage and cleaning expenses from Plaintiff (*id.*) in November 2019, and that TT Marketing referred the collection action to Transworld Systems, Inc. *Id.* at 43–44. Clifton states that "[Tenant Tracker] reported this debt to [Credit Reporting Agencies] Trans Union and Equifax in December 2019. [TT Marketing] reported this debt to Experian in December 2019. Any reports were generated and completed in Texas and forwarded to the credit bureaus' data operations center via the internet in Texas." *Id.* at 43.

In her response to the motion to dismiss, Reid produced two letters, the first dated November 22, 2019, and the second March 17, 2020. DN 9-1. These letters were sent by TT Marketing to Reid regarding the alleged Lake Crest Apartment debt. These letters do not appear in Reid's complaint. In Defendants' reply, they produced a second Clifton declaration in response to these letters. DN 10-1. In his second declaration, Clifton states that Tenant Tracker entered into an agreement with Southwind to provide services along with its affiliates. *Id.* at 139. "The terms of the Agreement were solely performable in Texas and Texas law applied to the relationship." *Id.* The agreement required Southwind to communicate service requests to Tenant Tracker and TT Marketing in Texas. *Id.* Clifton avers that: "All of the credit reporting regarding

3

Plaintiff was completed in Texas and forwarded to the Experian and Equifax data operations center in Texas and to Trans Union in Illinois.  Nothing was reported to a [Credit Reporting Agency ("CRA")] in Kentucky."  *Id.*

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal of the complaint for lack of personal jurisdiction.  The due process clause of the Fifth and Fourteenth Amendments to the United States Constitution imposes constitutional limits on the exercise of personal jurisdiction. Personal jurisdiction may be general or specific, depending on the nature of the defendant's contacts with the forum state.  *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002).  Only specific jurisdiction is at issue in this case.  *See* DN 9, at PageID # 110.

In all questions of personal jurisdiction, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S. Ct. 2174, 2183, 85 L. Ed. 2d 528 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945)). When a forum to seeks to exercise "specific jurisdiction over an out-of-state defendant who has not consented to suit there,"  due process requires that a defendant must have "purposely directed his activities at residents of the forum," and that the litigation must result from "alleged injuries that arise out of or relate to those activities."  *Id.* at 472–73, 105 S. Ct. 2174 (citations and internal quotation marks omitted).

 "When a federal court has 'federal question [jurisdiction], personal jurisdiction over a defendant exists if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant[] due

process.'" *Cmty. Tr. Bancorp, Inc. v. Cmty. Tr. Fin. Corp.*, 692 F.3d 469, 471 (6th Cir. 2012) (quoting *Bird*, 289 F.3d at 871). When interpreting the state's long-arm statute, the interpretation of the state's highest court is dispositive. *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1409–10 (Fed. Cir. 2009).

When a court considers a 12(b)(2) motion, the "plaintiff bears the burden of establishing the existence of jurisdiction." *Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007). Neither Plaintiff nor Defendants have requested an evidentiary hearing or suggested a need for discovery on the issue of personal jurisdiction. When a district court relies on written submissions and affidavits to resolve a Rule 12(b)(2) motion, rather than holding an evidentiary hearing, the plaintiff is only required to make "a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal." *Id.* at 549 (quoting *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)). The plaintiff must establish "with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887(6th Cir. 2002) (quoting *Provident Nat. Bank v. California Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)). "[T]he pleadings and affidavits submitted must be viewed in a light most favorable to the plaintiff, and the district court should not weigh the 'controverting assertions of the party seeking dismissal.'" *Air Prod.*, 503 F.3d at 549 (quoting *Theunissen*, 935 F.2d at 1459). However, a plaintiff may not rely on his pleadings to answer the movant's affidavits, "but must set forth, 'by affidavit or otherwise [,] . . . specific facts showing that the court has jurisdiction.'" *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989) (quoting *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir. 1974)).

## III.    DISCUSSION

In *Caesars Riverboat Casino, LLC v. Beach*, the Kentucky Supreme Court held that Kentucky's long-arm statute, KRS 454.210, does not extend to the outer limits of federal due process, and that "the proper analysis of long-arm jurisdiction over a nonresident defendant consists of a two-step process."  336 S.W.3d 51, 57 (Ky. 2011).  First, a court must determine whether the defendant's conduct falls within one of the specific provisions in KRS 454.210(2)(a). *Id.*  "If not, then *in personam* jurisdiction may not be exercised."  *Id.*  Second, and only if jurisdiction is permissible under the long-arm statute, the court must determine whether jurisdiction comports with federal due process requirements.  *Id.*  To interpret KRS 454.210(2)(a), the Kentucky Supreme Court instructed: "While we believe it fair to say that these provisions should be liberally construed in favor of long-arm jurisdiction, their limits upon jurisdiction must be observed as defined."  *Caesars*, 336 S.W. 3d at 56.  KRS 454.210(2)(b) further states: "When jurisdiction over a person is based solely upon [KRS 454.210(2)], only a claim arising from acts enumerated in this section may be asserted against him."

Reid's complaint does not identify which provision of KRS 454.210(2)(a) supports personal jurisdiction over Tenant Tracker and TT Marketing.  In her response to the motion to dismiss Reid argues that jurisdiction is proper under three provisions of KRS 454.210(2)(a):

> A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:
> 1. Transacting any business in this Commonwealth;
> 2. Contracting to supply services or goods in this Commonwealth;
> 3. Causing tortious injury by an act or omission in this Commonwealth; . . .

*See* DN 9, at PageID # 101.

A.      **Transacting Business in Kentucky**

The Kentucky Court of Appeals has explained:  "To invoke KRS 454.210(2)(a)(1), [the plaintiff] must show [the defendant] transacted business in Kentucky and the claim against them 'arises from' that transaction. That requires proof of 'a "reasonable and direct nexus" between the conduct causing injury and [their] activities in the state.' " *H.E.B., LLC v. Jackson Walker, L.L.P.*, 587 S.W.3d 333, 340 (Ky. Ct. App. 2019) (quoting *Carter v. Paschall Truck Lines, Inc.*, 388 F. Supp. 3d 883, 888 (W.D. Ky. 2019)).

In *Hall v. Rag-O-Rama, LLC*, the Eastern District of Kentucky reviewed case law interpreting KRS 454.210(2)(a)(1) and noted that courts have taken three approaches to evaluate what conduct  constitutes 'transacting business' in Kentucky.  359 F. Supp. 3d 499, 505 (E.D. Ky. 2019).  First, courts have looked to the definition: "Black's Law Dictionary defines 'transact' as '[t]o carry on or conduct (negotiations, business, etc.) to a conclusion.'"  *Id.* (quoting *Childress Cattle, LLC v. Cain*, No. 3:17-CV-388-JHM, 2017 WL 3446182, at *3 (W.D. Ky. Aug. 10, 2017)). Second, courts have looked at "whether there has been 'a course of direct, affirmative actions within a forum that result in or solicit a business transaction.'"  *Id.* (quoting *Gentry v. Mead*, No. 16-100-DLB-CJS, 2016 WL 6871252, at *3 (E.D. Ky. Nov. 21, 2016)).  Third, courts have followed the Sixth Circuit's interpretation of the same phrase in the Michigan long-arm statue, finding that "use of the word 'any' . . . establishes *that even the slightest transaction is sufficient to bring a corporation within [the forum's] long-arm jurisdiction*."  *Id.* at 506 (quoting *Eat More Wings, LLC v. Home Mkt. Foods, Inc.*, 282 F. Supp. 3d 965, 969 (E.D. Ky. 2017) (alteration and emphasis in original).  However, the *Eat More Wings, LLC v. Home Market Foods, Inc.* court further explained that "[making phone calls, sending facsimiles, sending e-mails, letters or other communications, standing alone, 'may be sufficient to confer jurisdiction on the foreign defendant

7

where the phone calls and faxes form the bases for the action.'" 287 F. Supp. 3d at 969–70 (quoting *Rice v. Karsch*, 154 F. App'x 454, 460 (6th Cir. 2005)).

Reid argues that TT Marketing's furnishing of her "credit information to the CRAs" in an attempt to collect the Lake Crest Apartments debt constitutes transacting business in Kentucky but does not cite to caselaw demonstrating that such conduct falls under KRS 454.210(2)(a)(1).  DN 9, at PageID # 103.  Furthermore, she has not shown that any of this activity took place in Kentucky.

Reid points to letters sent by TT Marketing dated November 22, 2019, and March 17, 2020, regarding the alleged debt addressed to Reid.  DN 9, at PageID #103.  Reid argues that these were dunning letters attempting to collect the debt, and that mailing the letters "constitutes transacting business in the Commonwealth." DN 9, at PageID # 103.  To support this conclusion Reid relies on nonbinding case law applying the long-arm statutes of other states.

Defendants maintain that "[a]ny business which either [TT Marketing] or [Tenant Tracker] may have conducted in Kentucky is significantly limited and highly irregular and not related in any way to Plaintiff's claims."  DN 4-1, at PageID # 41.  Clifton declares that TT Marketing's November 2019 letter "was merely a notice of the referral of the Southwind claim, the amount of the claim, notification of Plaintiff's right to dispute the debt and was a request for Plaintiff to provide her 'side of the situation.'" DN 10-1, at PageID# 139.  He declares that the March 2020 letter "was a status letter and again was merely a notice as it listed the amount of the claim. This letter was triggered by a Credit Verification Dispute ("CDV") filed by Plaintiff with Trans Union to which [TT Marketing] was statutorily required to respond." *Id.*  Clinton states that TTM's July 20, 2022, letter was sent in response to Plaintiff's letter "disputing the accuracy of the delinquent account."  DN 4-1, at PageID # 42.

8

Defendants argue the facts of this case follow *Thompson v. Koko*, No. 3:11-CV-648-H, 2012 WL 374054 (W.D. Ky. Feb. 3, 2012). In that case, the Court found that a bank sending emails, letters, and account statements to a Kentucky resident did not amount to transacting business in Kentucky. *Id.* at *2 ("The limited communications between [the defendant] and [the plaintiff]—confirming receipt of a wire, sending account statements, and responding to a demand letter—do not amount to transacting business as that statutory category has been applied in other cases.").

"[T]he key inquiry in personal jurisdiction cases concerns the activities of the *defendant*, not the plaintiff." *Spectrum Scan, LLC v. AGM CA*, No. 3:07-CV-72-H, 2007 WL 2258860, at *3 (W.D. Ky. Aug. 2, 2007*), adhered to on denial of reconsideration sub nom. Spectrum Scan, LLC v. AGM California*, 519 F. Supp. 2d 655 (W.D. Ky. 2007); *See also Eitel v. PNC Bank, N.A.*, 3:20-CV-12-RGJ, 2021 WL 4487609, at *7 (W.D. Ky. Sep. 30, 2021) (finding that communications responding to a plaintiff's requests "do not satisfy the requirements of transacting business in the Commonwealth"). Of the TT Marketing letters identified by Reid, all but the 2019 letter were mailed in response to queries from Reid. Therefore, only the 2019 letter could be considered transacting business in Kentucky.

The Sixth Circuit has found that mailing a letter may constitute transacting business in a forum state sufficient to confer personal jurisdiction over a foreign defendant, but only when that conduct "form[s] the bas[is] for the action." *Rice v. Karsch*, 154 F. App'x 454, 460 (6th Cir. 2005). Even if the 2019 letter was sufficient to constitute transacting business in Kentucky, we must conclude that Reid's claims do not "'arise[] from' the statutory provision upon which long-arm jurisdiction is predicated." *Caesars*, 336 S.W.3d at 58. In defining "arising from," *Caesars* held that there must be "a reasonable and direct nexus between the wrongful acts alleged in the

complaint and the statutory predicate for long-arm-jurisdiction." *Id.* at 59.  In Reid's complaint, it is not TT Marketing's 2019 letter, but the 2022 letter that forms the basis for this action.  Because there is a more than two-year period between the 2019 letter and the actions alleged in the complaint, the Court finds that there is no reasonable and direct nexus between the statutory predicate for long-arm jurisdiction and the wrongful acts alleged.

Accordingly, the Court finds Reid has failed to make a *prima facie* showing that  TT Marketing or Tenant Tracker's conduct falls under KRS 454.210(2)(a)(1).

### B.      Contracting to Supply Services in Kentucky

Reid next argues that personal jurisdiction is proper pursuant to KRS 454.210(2)(a)(2): "Contracting to supply services or goods in this Commonwealth."  "The crux of this statutory provision is not where the alleged contract was executed, but whether the contract provided for 'services or goods to be transported into, consumed or used in Kentucky.'" *H.E.B., LLC v. Jackson Walker, L.L.P.*, 587 S.W.3d 333, 342 (Ky. Ct. App. 2019) (quoting *Hinners v. Robey*, 336 S.W.3d 891, 894 (Ky. 2011)); *see also Hughes v. Haas*, 413 S.W.3d 315, 319 (Ky. Ct. App. 2013) ("According to the express terms of our statute, personal jurisdiction invoked by the long-arm statute is valid only if the contract is to supply goods and services ***within this Commonwealth.***") (emphasis in original).

Reid's complaint does not allege that TT Marketing contracted to supply services in Kentucky.  Reid argues that TT Marketing "contracted with a Kentucky corporation to supply debt collection services in the Commonwealth." DN 9, at PageID # 102.  Reid points to the Clifton affidavit as evidence of the contract between TT Marketing and Southwind.  *Id.*  However, the provision Reid points to is silent as to where the services will be performed.  *See* DN 4-1, at PageID

# 41.  The second Clifton declaration states that services under the contract were to be performed in Texas.  DN 10-1, at PageID # 139.  Reid has not submitted affidavits or specific facts to show that this was a contract to provide services in Kentucky.  Therefore, Reid has not met her burden to demonstrate TT Marketing's conduct falls within KRS 454.210(2)(a)(2).

Similarly, Reid's complaint contains no allegations that Tenant Tracker contracted to supply services in Kentucky.  Reid points to no specific facts regarding the existence of such a contract but states "there necessarily has to be a contract . . . between [Southwind] and [Tenant Tracker]."  DN 9, 15 PageID # 102.  Tenant Tracker has provided evidence of a contract with Southwind, but states in the Clifton declaration that the services "were solely performable in Texas."  DN 10-1, at PageID # 139, 143–44.  Therefore, the Court finds that Reid has failed to make a *prima facie* showing that the services under the contract were to be performed in Kentucky, and that Tenant Tracker and TT Marketing's conduct falls under KRS 454.210(2)(a)(2).

## C.     Causing Tortious Injury by an Act in Kentucky

KRS 454.210(2)(a)(3) provides for long-arm jurisdiction over a defendant for "[c]ausing tortious injury by an act or omission in this Commonwealth."  Reid argues jurisdiction is proper because "TT Marketing directly sent dunning letters to Ms. Reid in Kentucky, addressed to [her] in the Commonwealth, which letters contained false, deceptive, and misleading misrepresentations as to the amount and status of the debts at issue."  DN 9, at PageID # 107.  Reid points to *Schneider v. Hardesty*, where the Sixth Circuit examined a provision in the Ohio long-arm statute and found that a defendant who mailed letters to Ohio "should have reasonably expected that the letters would cause injury in Ohio making the exercise of jurisdiction proper."  669 F.3d 693, 701 (6th Cir.

2012).   Reid argues the provisions in the Ohio and Kentucky long-arm statute "are almost identical."[2]  DN 9, at PageID # 107.

However, the Sixth Circuit has come to a different conclusion:

In *Pierce*, the [Kentucky Court of Appeals] held that KRS 454.210(2)(a)(3) was not satisfied when the conduct alleged was an out-of-state defendant's mailing of a letter to a Kentucky resident, containing allegedly tortious information about another Kentucky resident. While the letter caused a consequence in Kentucky, it was 'clear' that the defendant 'ha[d] not acted in the Commonwealth of Kentucky.'

*Blessing v. Chandrasekhar*, 988 F.3d 889, 902 (6th Cir. 2021) (quoting *Pierce v. Serafin*, 787 S.W.2d 705, 706 (Ky. Ct. App. 1990)) (internal citation omitted).  The Sixth Circuit went on to state that KRS 454.210(2)(a)(3) "does not apply to those who act outside of Kentucky."  *Id.*  Reid provides no contrary case law to support the proposition that by mailing a letter from Texas, TT Marketing acted in Kentucky.

Because Defendants' alleged wrongful act was not committed within the Commonwealth, the Court finds that Reid has failed to state a *prima facie* case of jurisdiction over Tenant Tracker or TT Marketing under KRS 454.210(2)(a)(3).

### D.      Jurisdiction Under the Fair Credit Reporting Act

Reid next argues that jurisdiction is proper under the FCRA because TT Marketing and Tenant Tracker "furnished credit information about Ms. Reid and the Lake Crest Apartments debt at issue in this case to the CRAs in an attempt to collect the debt from her."  DN 9,  at PageID # 111.   Reid points to *Stapp v. Credit Managers Institute, Inc.*, for the proposition that personal jurisdiction is proper under the FCRA "where the plaintiff resides, so long as defendant knew of

---

[2] The Court notes that the Ohio provision addressed in *Schneider* is not identical to KRS 454.210(2)(a)(3).  *See* 669 F.3d at 699 (quoting OHIO REV.CODE ANN. § 2307.382(A)(6)) ("[C]ausing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state.").

plaintiff's residence when violating plaintiff's rights under the FCRA." No. 3:04-CV-74-H, 2005 WL 8175073, at *2 (W.D. Ky. Apr. 21, 2005). However, the *Stapp* Court stated that "Kentucky's long-arm statute extends to the limits of Due Process" and therefore only considered "whether Due Process permits the exercise of personal jurisdiction." *Id.* at *1. *Stapp* was decided before the Kentucky Supreme Court held that the long-arm statute does not extend to the full constitutional limits of due process. *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. 2011) ("Only after the requirements of KRS 454.210 have been satisfied can it be said that personal jurisdiction over a non-resident extends to the outer limits permitted by federal due process."). Reid does not identify caselaw finding this conduct falls under one of the specific provisions of the long-arm statute.

Reid similarly argues that jurisdiction is proper because the credit information furnished by Defendants to the CRAs was defamatory, and that Defendants' knowledge that the information "would be republished in Kentucky and harm [Reid] in the Commonwealth makes jurisdiction proper in this Court." DN 9, at PageID # 114. Reid fails to point to which provision of the Kentucky long-arm statute this conduct would fall under and does not cite to caselaw decided after *Caesars* to support long-arm jurisdiction under this theory.

Because Reid has failed to make a showing that TT Marketing and Tenant Tracker's conduct falls under one of the Kentucky long-arm statute's enumerated categories, "*in personam* jurisdiction may not be exercised," and the personal jurisdiction inquiry ends. *Caesars*, 336 S.W.3d at 57.

## IV.    CONCLUSION

Because the Court finds that Reid has failed to make a *prima facie* showing that Defendants are amenable to service of process under Kentucky's long-arm statute, she has failed to make a

necessary showing for the Court to exercise personal jurisdiction over Defendants. *See Cmty. Tr. Bancorp, Inc. v. Cmty. Tr. Fin. Corp.*, 692 F.3d 469, 471 (6th Cir. 2012). Therefore, the Court concludes it lacks personal jurisdiction over Defendants, and it need not reach the federal due process analysis.

 For these reasons, the Court will grant Defendants' motion by separate order.


August 2, 2023

Charles R. Simpson III, Senior Judge
United States District Court

14